IN THE

## SUPREME COURT OF JUDICATURE,

OF THE

## STATE OF NEW JERSEY,

## AT NOVEMBER TERM, 1836.

---

### THE TOWNSHIP OF BERNARDS v. THE TOWNSHIP OF WARREN.

A farm was conveyed to A. S. *in trust* for C. (the pauper) and his wife during their joint lives; and after the death of the survivor of them, to their children in fee. C. the pauper paid the consideration money, took possession of the farm, and resided upon it about five years, receiving the rents and profits, and paying the taxes. *Held*, that C. the pauper was so seized of a freehold estate, as to give him a settlement.

---

This was a *certiorari* directed to the Court of Quarter Sessions of Somerset county, removing the judgment of affirmance made by that court, of an order of removal of a pauper. The following statement of the case was agreed upon.

William D. Stewart and 'Squire Terill, two of the Justices of the Peace in and for the county of Somerset, in the month

of August eighteen hundred and thirty-two, made an order of removal in the common form, removing William Compton and Susannah his wife, from the township of Warren to the township of Bernards, in the county of Somerset, having previously examined the said William and adjudged, that the legal settlement of the said William and Susannah was in the township of Bernards. The following is a copy of the examination of the said William Compton.

"SOMERSET COUNTY, ss. The voluntary examination of *William Compton*, taken in writing, and upon oath before William D. Stewart and 'Squire Terill, two of the Justices of the Peace in the county of Somerset, touching his last legal settlement, as a pauper, and Susannah his wife, on application for relief from the overseers of the township of Warren in the county aforesaid, on oath saith, that about the year 1809, he purchased a farm from Doc. Hugh McEwen and David Ayers, executors, &c. of Nathaniel Ayers, deceased, being a part of said deceased's farm, of about ninety acres, for which he paid and secured to be paid about twenty-two hundred dollars, and received from the said executors a deed for the same, and took possession accordingly, and resided on the said farm, and in the township of Bernards, about four or five years. Said farm is situated in the township of Bernards in the county of Somerset. He then sold said farm to Daniel Doty, and then moved with his family into a house belonging to Samuel Compton, in the township of Warren in the county of Somerset, and lived there about five or six months, he then moved into a house belonging to Peter Ayres, near the Stone House in the township of Bernards, in Somerset county, and lived there about seven months. Soon after he moved into said house of Peter Ayres, he contracted with Solomon Doughty, for a part of the farm of the late Reuben Compton, deceased, now owned by Nathaniel Pennington, in the township of Warren in the county of Somerset, of about thirty-five acres, and Solomon Doughty made and executed a deed for said land to Andrews Smally, Esq. trustee, in trust for the said William Compton, the term of his natural life, and from and after his decease, to his wife Susannah, during her widowhood and from and after her inter-

marriage, if that should ever happen, then to the use of the children, son and daughter, of the said William Compton and Susannah his wife, and to such other children, as they may have, to the only proper use, benefit and behoof of the said heirs of William Compton and Susannah his wife, and the heirs and assigns of said children forever. The consideration mentioned in the said deed, was one thousand dollars, and the deed bears date May 20th, 1813. In the month of November following, he moved unto said farm, and resided on said farm for about five years, he was then dispossessed of the said premises by the foreclosure of a mortgage given on said land, by Samuel Compton to Jacob Vail, sometime previous to the purchase of the same by the said Andrew Smally, trustee as aforesaid. He then left said premises, and lived since that time in different parts of the township of Warren, until the present time, has purchased no land, has no goods and chattels, is lame and unable to labour, and cannot support himself, and prays relief.

From this order of removal thus made by the two Justices, the overseers of the poor of the township of Bernards appealed to the Court of General Quarter Sessions of the Peace, in and for the county of Somerset. After the appeal was duly entered, the following testimony additional to the foregoing examination of the said William Compton, was taken by consent of parties, subject to all legal exceptions to be taken on the argument of the cause."

*William Compton,* the pauper, being duly sworn, says, " knows the premises in question, he agreed for them with Solomon Doughty. I paid Doughty for them, assigned to him obligations for the amount. I leased out the premises to David Ayers the first year, after that, I went into possession, I always used and enjoyed the property as my own, did not cut much timber, I improved the premises considerably. Andrew Smally, Esq. did not exert any authority over the premises, while I was on them, which was for about six years. Solomon Doughty agreed to pay off the Vail mortgage, witness having assigned to him obligations of one thousand dollars, the full amount of the purchase money; Doughty did not pay off the Vail mortgage. I paid the taxes on the land. When I and my

Bernards v. Warren.

wife started in life, we had about an equal amount of property; we had been married about twenty years, when I bought the Doughty farm. Nathaniel Compton sworn, says William Compton is my father, he lived on the premises and occupied them as his own, he made considerable fence on it, he leased a part of the premises to witness, the improvements were put on by my father's labour and expense, and I paid him the rent. *Andrew Smally, Esq.* being sworn, says that he is a trustee in a deed for land in Warren, from Solomon Doughty, for the benefit of William Compton and family, has seen the deed, and was in witness's possession for some time, the wife and Compton, came to witness and wished witness to assent to being trustee, witness did assent, witness says that he never had any control over the premises mentioned in the deed of trust, nor did he pretend to have any control. Does not know who paid the consideration money for the deed, was not present at the purchase, and knew nothing of the execution ·of the deed at the time. William Compton had my note for about one hundred dollars, which he passed to Solomon Doughty. Witness paid Doughty the amount of the note. Witness says the money was Compton's money. Compton lived on the place, and used it five or six years. Compton was dispossessed of this property by Jacob. Vail, he foreclosed a mortgage which he had prior to the deed of trust, the amount of the mortgage was four hundred or five hundred dollars. Witness looked some time ago for the deed among his papers, but did not find it, the property was thought to be worth one thousand dollars, and that was about its value."

The Justices of General Quarter Sessions affirmed the order of the Justices, at the term of January eighteen hundred and thirty-three. The following reasons for reversal were filed in this court.

1. Because as well the order and judgment of the said Court of General Quarter Sessions of the Peace, as the order and adjudication of the said William D. Stewart and 'Squire Terill, are illegal and erroneous, and ought to be set aside.

2. Because the last legal settlement of William Compton and Susannah his wife, was not at the time of the said order of

Bernards *v.* Warren.

removal of the said Justices in the township of Bernards in the county of Somerset.

3. Because the last legal settlement of William Compton and Susannah his wife, was at the time of the making the said order of removal, in the township of Warren.

*J. S. Green and Southard,* for plaintiffs in *certiorari,* cited 11 *Mass. R.* 327; 2 *Pick. R.* 29; 6 *Mass. R.* 50; 2 *Yeates, R.* 51.

*W. Thompson and Scott, contra.*

The opinion of the court, was delivered by

HORNBLOWER, C. J. William Compton, the pauper, in the year 1813, purchased a farm in the township of Warren, of the value of, and for which he paid one thousand dollars. He took possession of the farm, and resided upon it about five years; receiving the rents and profits, and paying the taxes. At the time of the purchase, the property was subject to a mortgage for five hundred dollars, which his vendor was to pay off, and satisfy out of the consideration money, paid by Compton to him. This not being done, Compton was finally turned out of possession, by a suit in Chancery upon that mortgage. If this were the whole of the case, there would be no doubt, upon the authority of *Newark* v. *Pompton, Penn. R.* 1039, but that Compton acquired a settlement in Warren. The difficulty arises upon another part of the case: which is, that the deed for the farm, was not made to Compton himself; but by his direction, it was made to Andrew Smally, Esq., *in trust,* for him and his wife, during their joint lives; and after the death of the survivor of them, to their children in fee. Hence it is argued that Compton, was never so *seized,* as to entitle him to a settlement in the township of Warren.

The case of *Tewksbury* v. *Readington,* 3 *Halst.* 319, does not stand in the way of the plaintiffs in *certiorari;* for, however strongly the opinion expressed in that case, may have indicated, that nothing less than an absolute title *at law,* would satisfy the language of our statute; yet it is manifest the court did not intend to conclude the question now presented to us. In that case the pauper had not even an equitable title; he had only a

naked possession; and at most, a *mere right* in equity, to be substituted in the place of Bocker, (the man under whom he entered) and to have a conveyance upon fulfilling the conditions, which Bocker was bound to perform according to his contract with Mr. Rutherford, who was the owner in fee. And so far was the court in that case, from deciding, that *seizin* in equity, or of an equitable estate, was not sufficient, that the Judge who delivered the opinion of the court, expressly said, that, "whenever the case of a *cestuy que trust*, shall present itself to the court upon *express* trusts, created in a *deed* or settlement; affording no uncertainty; where the trustees are a mere machinery for the express purpose of protecting him in possession and enjoyment, it will be time enough for the court to give an opinion upon it." In the cause now before us, we have that very case; Compton, the pauper, was the purchaser of the farm: he paid for it, and had the actual, uncontrolled possession for five years: he resided upon it, enjoyed the profits and paid the taxes. His title to the land, and his right of possession were complete, and undisputed. Smally was a naked trustee; a *mere instrument* for protecting him in the enjoyment of, and preserving to him, the estate. Compton was substantially, and truly, the owner of the land, and could not have been removed from it, by Smally himself.

Was Compton then, so *seized of a freehold estate*, as to give him a settlement? I am clearly of opinion that he was, both by the terms of the statute, and upon the soundest principles of law. A *cestuy que trust*, in possession, is considered, in every respect, as the real owner of the estate: 1 *Cruis. Dig. tit. Trust, Sect.* 4. *p.* 493. To run after the naked legal title, and overlook the actual ownership, declared upon the very face of that title, would be like pursuing the shadow, and leaving the substance behind.

It is not necessary to have recourse to English settlement cases for authority upon this point; perhaps none, in very terms can be found; but many may be cited, which in principle, fully sustain my view of the subject. By 9 *Geo.*, 1 *C.* 7, it is enacted, that no person shall acquire a settlement, "by virtue of any purchase of *any estate*," whereof the consideration does

not amount to thirty pounds, *bona fide* paid &c. Under this statute, the purchaser of an equity of redemption, has been held to give a settlement, provided the pauper had actually and in good faith paid thirty pounds for the estate. *The King* v. *Inhabitants of Mattingly*, 2 *T. R.* 12. So in *The King* v. *Offchurch*, 3 *T. R.* 117, it was decided that a husband gained a settlement by living on an estate, vested in Trustees for the separate use of his wife; that is, by being in possession of the *equitable* estate of the wife. Lord KENYON in delivering his opinion, asks the question, whether it must be a *legal estate* in order to confer a settlement; and then answering his own interrogatory, replies " certainly not "; and after citing cases to show that an equitable *estate* is sufficient to confer a settlement, his Lordship adds, " and indeed this position is confirmed by many other cases, and there are none in opposition to it." nor is there any thing in the language of our statute to confine its influence to *legal* estates; it says " every person who shall become *seized* of *any* freehold estate, &c.," that is, *any estate*, of freehold, whether for life or in fee, legal or equitable. This accords with the decision of this court, in the case of *Newark* v. *Pompton, Penn. R.* 1039, and upon no other principle can it be sustained; for after all that can be said, a mortgage has not the *strict legal estate*, notwithstanding courts of law, now follow the courts of equity, and consider the mortgagor for certain purposes, as the real owner. There is a wide difference between a *mere right* in equity, to have an estate, and an *equitable* estate in possession. In *Tewksbury* v. *Readington* the pauper, had at most, only the former, but Compton in the case before us, had the latter.

By the 6th *Section* of the statute, making lands liable to be sold for the payment of debts, *Rev. Laws* 430, the Sheriff is to be commanded to make the money of " the lands, hereditaments and real estate, whereof the party *was seized*, &c. Under this statute, so far as I know, it has never been doubted in this State, but that an equity of redemption, may be levied upon and sold under a *fi. fa.* And can any one doubt, whether Compton was not so *seized* of his life estate in the farm, as that it might have been sold under an execution ? In *Waters and*

*al.* v. *Stewart,* 1 *Caine's Cas. in Error,* 47, SPENCER, Justice says, " where a statute speaks of *seizin,* an equitable seizin, may be as well intended, as a legal one." KENT, Justice, in the same case says, " the word *seizin* in a statute, is frequently construed to apply, to an equitable, as well as to a strict legal seizin. In this position those learned Judges are fully sustained by the case of *Shropnel* v. *Vernon,* 2 *Bro. C. C.* 268. That was a case upon the annuity act, 17 *Geo.* 3. which exempts from the necessity of enrolment, the grant of an annuity, where the grantor is *seized* in fee or in tail, and it was held that an *equitable* estate in fee or in tail, was within the exemption, as much as legal estates. The LORD CHANCELLOR in that case, says, that, " in many acts of Parliament, an equitable estate, is considered the same, as if it were a legal estate ; " and he refers to the words, " seized in law or equity " in the qualification act, as evidence that the word *seized* is applicable to both.

As to what constitutes an equitable seizin, or rather, a seizin of an equitable estate, the books abundantly show us. In *Casborne* v. *Scarfe and. al.* 1 *Atk.* 604, it was held that a husband might be tenant by the courtesy of his wife's equity of redemption; and yet we know, that *seizin in fact,* is one of the essential prerequisites of such an estate. But Lord HARDWICKE in that case held, that there was such a *seizin* or possession of the equitable estate of the wife, as in equity is considered equivalent to an actual seizin of a freehold estate, at the common law; and he adds, " actual possession, clothed with the receipt of rents and profits, is the highest instance of an equitable seizin." The same doctrine is more fully illustrated in *Burgass* v. *Wheates,* 1 *Bl. R.* 260 *and seq., and see* 4th *Kent's com.* 1st *edit. fol.* 31. Here, Compton had the actual possession, and was in the receipt of the rents and profits. He was therefore *seized* of a freehold estate in equity, and that satisfies the statute. In *Rex* v. *Geddington,* 2 *B. and C.* 129, it was decided that the words " any estate or interest " in a statute, means either a legal or equitable estate or interest; and I can perceive no reason for confining the words " freehold estate " in our statute for the settlement of paupers, to legal

estates of freehold.　(See *The King* v. *St. Michael's, Dougl.* 608, 630.　*Whitestown* v. *Constable*, 14 *Johns. R.* 469.)　I am therefore of opinion, that Compton's legal settlement was in Warren; and consequently both orders, that of the Justices as well as of the Quarter Sessions, must be quashed.

*Orders of the Justices, and the Quarter Sessions quashed.*

CITED in *Yeo* v. *Mercereau*, 3 *Harr.* 394.